# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
#### (at Lexington)

| | | |
|---|---|---|
| LARRY A. CUTTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-443-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ETHICON, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This case, previously styled 2: 12-cv-1790, was recently remanded to this Court from the United States District Court for the Southern District of West Virginia multidistrict litigation ("MDL") *In re Ethicon, Inc., Pelvic Repair Systems Products Liability Litigation*, 2: 12-md-2327. The MDL involves allegedly defective women's pelvic mesh products manufactured by Defendant Ethicon, Inc., a wholly owned subsidiary of Defendant Johnson & Johnson. [Record No. 110-2, pp. 2-4] The defendants and Plaintiffs Jenesta and Larry Cutter have briefed the Court on several motions that were resolved prior to remand. [Record No. 128] Further, they have indicated that the defendants' July 8, 2016 motion for summary judgment on all counts [Record No. 76] is ripe for consideration. [Record No. 128, pp. 2-3]

The Court has reviewed the evidence and relevant law and finds dismissal of the September 13, 2012 Second Amended Short Form Complaint's [Record No. 27] Counts 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 14, 16, 17, and 18 is appropriate at this time. The Court declines to enter summary judgment on Counts 7, 10, 13, and 15. Accordingly, the defendants' motion for summary judgment will be granted, in part, and denied, in part.

# I.

## A.  Factual Background

Dr. J. Michael Guiler, a gynecologist, diagnosed Jenesta Cutter with rectocele,[1] atrophic vagina, bilateral ovarian cysts, fibroids, dyspareunia,[2] pelvic pain, and back pain on April 27, 2006.  [Record Nos. 76-1, p. 15 and 82-6, pp. 8-9]  He recommended the implantation of a posterior Prolift, a polypropylene mesh enhancement device, to treat the rectocele pelvic organ prolapse.  [*Id.* at pp. 9, 25]  Ethicon manufactures this device.  [Record No. 110-2, pp. 2-4]

Dr. Guiler began using synthetic mesh products to repair pelvic organ prolapses around the year 2000 and had conducted 200-300 of these surgeries with various products by the time of his 2016 deposition.  [Record No. 82-6, pp. 5, 21]  He first received training on the use of the Prolift device in 2005 from Ethicon preceptors, doctors who conduct training sessions using the company's implants to educate other surgeons.  [*Id.* at p. 6]

Dr. Guiler learned of the risks associated with Prolift implantation through his own personal surgical experience and by observing preceptors' demonstrations.  [*Id.* at p. 7]  He also attended medical "summits," where Ethicon's representatives may have conveyed information regarding the Prolift's use and risks.  [*Id.* at pp. 11-12]  He did not rely upon the

---

[1] Rectocele is a type of pelvic organ prolapse that specifically involves a posterior vaginal prolapse.  [*See* Record No. 82-6, p. 5; Posterior Vaginal Prolapse (Rectocele) https://www.mayoclinic.org/diseases-conditions/rectocele/diagnosis-treatment/drc-20353419 (last visited January 7, 2020).]

[2] Dyspareunia is the medical term for painful intercourse.  Painful Intercourse (Dyspareunia), https://www.mayoclinic.org/diseases-conditions/painful-intercourse/symptoms-causes/syc-20375967 (last visited January 7, 2020).

Prolift's written "instructions for use" or educational CDs to learn of the risks and, in fact, stated that he had never relied upon such sources in his surgical practice. [*Id.* at pp. 6, 22]

The doctor knew that the risks of mesh implantation ranged from mild to severe when he recommended the surgery to Jenesta in 2006. [*Id.* at p. 23] He specifically understood that the Prolift's implantation could result in contracture of the mesh's "arm," dyspareunia, and general pelvic pain. [*Id.* at p. 22] Dr. Guiler agreed that if preceptors had told him that the device was contraindicated for sexually active women, he would have informed Jenesta and weighed that information prior to making his 2006 surgery recommendation. [Record No. 82-7, p. 4]

But Dr. Guiler also testified that his subsequent knowledge of Prolift risks and complications as of 2016 did not change his opinion that the "Prolift device was safe and effective for the treatment of pelvic organ prolapse in women" in 2006. [*Id.* at p. 1] He stated that he had a good experience using the Prolift, maintained that the benefits of the procedure outweighed the risks in 2006, and continued to believe that the implant had generally improved patients' quality of life. [*Id.*]

Jenesta agreed to the Prolift implant. Her decision was entirely "based on the recommendation of Dr. Guiler." [Record No. 82-3, p. 20] Jenesta had no knowledge of pelvic mesh prior to Dr. Guiler's recommendation and had not encountered any promotions or warnings concerning Ethicon's device. [*Id.* at pp. 19-20, 22] She has since stated that she would not have undergone the procedure had she actually known of the pain allegedly caused by the device. [*Id.* at p. 51]

Dr. Guiler performed the procedure on June 2, 2006. [*Id.*] Jenesta reported, *inter alia*, pelvic pain, soreness and burning, constipation, and urine leakage during later 2006

appointments.  [Record No. 76-1, pp. 12-14]  The doctor then discovered in October 2008 that the right arm of the mesh device had "come loose."  [Record No. 82-3, pp. 25-26]  He informed Jenesta of the complication and performed an initial revision surgery on December 8, 2008, to remove part of the mesh.  [*Id.* at 26]  The plaintiff continued to suffer from pelvic pain, stomach cramping, bloating, dyspareunia, and back pain following this December 2008 surgery but did not inform a physician until August 2010.  [*Id.*]  Dr. Van Jenkins then performed a second revision surgery on September 27, 2010, to remove another portion of the Prolift mesh that had "rolled up."  [*Id.* at p. 28]

Jenesta reported further dyspareunia to Dr. Jenkins in December 2010.  [*Id.* at p. 29] She also informed the doctor that her husband (Larry) and co-plaintiff in this case, had felt a "sharp scrape" during intercourse.  [*Id.*]  In March 2011, Dr. Jenkins recommended a third revision surgery to remove Prolift mesh.  [*Id.* at p. 30]  Dr. John Jelovsek performed a third and final revision surgery, removing part, and perhaps all,[3] of the remaining mesh on March 5, 2012.  [*Id.* at p. 31]

## B.  Procedural Background

Jenesta and Larry Cutter saw an attorney advertisement on television in November 2011 that described the Prolift's alleged defects and informed them of litigation surrounding the device.  [Record Nos. 82-3, p. 6 and 82-4, p. 4]  They filed the present lawsuit on May 14, 2012.  [Record No. 1]  Their initial Complaint asserted the following ten counts: (1) product liability act– defective manufacture and design; (2) product liability act– failure to warn; (3) negligence; (4) breach of express warranty; (5) breach of implied warranty; (6) common law

---

[3] The parties dispute how much mesh, if any, remains.  [Record Nos. 77, p. 4 and 82, p. 3] This factual disagreement is not material to the present analysis.

fraud; (7) constructive fraud; (8) negligent misrepresentation; (9) loss of consortium; and (10) punitive damages. [Record No. 1]

The MDL panel transferred this case to the MDL in the Southern District of West Virginia on May 31, 2012. [Record No. 31] The MDL's plaintiffs filed a First Amended Long Form Complaint on August 31, 2012, alleging eighteen counts against the defendants. [Record No. 110-1] The plaintiffs in this case filed a First Amended Short Form Complaint on September 5, 2012, adopting these claims. [Record No. 26] The Cutters subsequently filed the operative Second Amended Short Form Complaint, which alleges the same counts, on September 13, 2012. [Record No. 27]

The Second Amended Short Form Complaint, asserts the following grounds for relief: (1) negligence; (2) strict liability–manufacturing defect; (3) strict liability– failure to warn; (4) strict liability– defective product; (5) strict liability– design defect; (6) common law fraud; (7) fraudulent concealment; (8) constructive fraud; (9) negligent misrepresentation; (10) negligent infliction of emotional distress ("NIED"); (11) breach of express warranty; (12) breach of implied warranty; (13) violation of consumer protection laws; (14) gross negligence; (15) unjust enrichment; (16) loss of consortium; (17) punitive damages; and (18) discovery rule and tolling. [Record No. 27] The plaintiffs have clarified they no longer intend to assert a separate manufacturing defect claim (Count 2) [Record No. 82, p. 1], and Count 2, therefore, will be dismissed.

The defendants have filed the pending motion for summary judgment, seeking dismissal of all claims. [Record No. 76] They specifically contend: (1) the personal injury, products liability, and loss of consortium claims are time-barred by the applicable statute of limitations [Record No. 77, pp. 5-10]; (2) the failure to warn claim alternatively fails given the

learned intermediary doctrine and Dr. Guiler's awareness of risks, [*id.* at pp. 10-14]; (3) the design defect claim alternatively fails because the plaintiffs cannot establish that a feasible alternative design would have prevented Jenesta's injury [*id.* at pp. 15-17]; (4) Larry's loss of consortium claim alternatively fails because it is derivative of Jenesta's claims, all of which fail, [*id.* at p. 19]; (5) the breach of warranty claims fail for lack of privity and are also barred by the applicable statute of limitations, [*id.* at pp. 17-18]; and (6) the negligent misrepresentation and fraud claims fail because there is no evidence that the plaintiff relied on an affirmative and material representation made by Ethicon [*id.* at p. 18]. The defendants further contend that the plaintiffs cannot assert separate claims for punitive damages and "discovery rule and tolling." [Record No. 83, p. 2 n. 2, 3] As a result, they argue that the entire suit should be dismissed with prejudice if the Court finds summary judgment should be entered on the remaining claims. [*Id.*]

## II.

### A. Standard of Review

"Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *I.L. by and through Taylor v. Tenn. Dep't of Educ.*, 739 Fed. App'x 319, 321 (6th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). The moving party initially bears the burden of "pointing out" that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the movant meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must

be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court views all evidence in the light most favorable to the nonmoving party. *McLaughlin*, 772 F. App'x at 302 (citing *Anderson*, 477 U.S. at 252).

## B. Applicable Law

The parties agree that Kentucky law is applicable to the substantive claims the defendants seek to dismiss through the summary judgment motion. [Record Nos. 77, pp. 4-5 and 82, p. 1] The defendants specifically contend that Kentucky law applies because courts apply Kentucky law to tort claims where the Commonwealth has "any significant contact" with the underlying circumstances. [Record No. 77, pp. 4-5 (citing *Sierra v. Williamson*, 2013 WL 3456988, at *5 (W.D. Ky. Jul. 9, 2013); *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009); *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968); and *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. App. 1996))].

"When determining which state's substantive law to apply, federal courts sitting in diversity look to the conflict of laws rules in the forum state, in this case, Kentucky." *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010) (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir.2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))). The defendants' argument for applying Kentucky law appears to assume that the Court will construe the breach of warranty and unjust enrichment claims as veiled personal injury actions rather than contract or quasi-contract actions [*see* Record No. 77, pp. 17-18], which are evaluated under the different "*most significant contact*" test of Restatement (Second) of Conflict of Laws. *See Saleba*, 300 S.W.3d

at 181.[4]  But because the parties agree that Kentucky law should apply to the substantive claims and Kentucky appears to have the "most significant contacts" to the facts underlying the Cutters' alleged injuries, the Court will apply Kentucky law to the substantive issues without belaboring the choice of law analysis.  *See id.*; Restatement (Second) of Conflict of Laws §§ 6, 188.

Further, a significant portion of the motion for summary judgment is dedicated to arguments concerning whether certain claims are barred by applicable statutes of limitations. [Record Nos. 76 and 77]  "A district court, sitting in diversity, must apply the law of the forum state in determining statute of limitations questions."  *Swanson v. Wilson*, 423 F. App'x 587, 592 (6th Cir. 2011) (citing *Atl. Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 205 (6th Cir.1996)).  Thus, the Court will also apply Kentucky law to questions regarding the application of statutes of limitations.

### C.  Counts to be Dismissed

**1.      Counts 1, 3, 4, 5, 14, and 16 are Barred by the Statute of Limitations.**

The defendants contend that the personal injury, products liability, and loss of consortium claims are barred by the applicable statute of limitations.  [Record No. 77, pp. 5-10]  In Kentucky, "[a]n action for an injury to the person of the plaintiff" must be commenced

---

[4] At least one recent case suggests that Kentucky may have abandoned the "any significant contact" test in tort cases for the "most significant contact" test.  *Kirilenko v. Kirilenko*, 505 S.W.3d 766,769 (Ky. 2016) ("Kentucky follows the 'most significant relationship' approach in tort and contract cases." (citing *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 566-67 (Ky. 2012); *Saleba*, 300 S.W.3d at 182 n. 2)). The appropriate test is unclear, however, because *Kirilenko* was a divorce case that did not involve a tort claim.  *Id.  Kirilenko* also supports this point by citing to a *Saleba* footnote that explicitly endorses the "any significant contact" test for choice of law determinations regarding tort claims.  *Id.* (citing *Saleba*, 300 S.W.3d at 182 n. 2 (Ky. 2009)).

within a year after the cause of action accrues. Kentucky Revised Statutes ("KRS") § 413.140(1)(a). The KRS § 413.140(1)(a) one-year limitations period applies to products liability and personal injury claims. *E.g.*, *Richardson v. Rose Transport, Inc.*, 617 F. App'x 480, 484 (6th Cir. 2015); *Lightfoot v. Eli Lilly Pharm. Co.*, No. 5: 17-149-DCR, 2017 WL 4573377, at *2 (E.D. Ky. May 11, 2017) (citing *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010)). It also applies to loss of consortium claims. *Richardson*, 617 F. App'x at 484.

The significant issue here, however, is *when* these claims accrued. A cause of action ordinarily accrues on the date of an injury even if a plaintiff is not made aware of the extent of her injury until later. *Asher v. Unarco Material Handling, Inc.*, No. 6: 06-548-DCR, 2008 WL 2548800, at *3 (E.D. Ky. June 23, 2008); *see also Caudill v. Arnett*, 481 S.W.2d 668, 668-70 (Ky. 1972). However, "[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that [s]he has been injured but also that [her] injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) (internal quotations and citations omitted). "The discovery rule stops tolling the statute once the plaintiff knows, either actually or constructively, that the defendant 'may' have caused her injury– definitive knowledge of causation is not needed." *Adams v. 3M Co.*, No. 7: 12-61-ART, 2013 WL 3367134, at *3 (E.D. Ky. Jul. 5, 2013) (citing *Louisville Trust Co.*, 580 S.W.2d at 501). "Constructive knowledge, through awareness of sufficient 'critical facts' to put the plaintiff on notice, will trigger the statute of limitations period." *Id.* (citations omitted).

The discovery rule frequently arises in cases involving medical malpractice and latently hazardous substances because plaintiffs facing such circumstances cannot reasonably be

expected to immediately ascertain the existence or source of a legally cognizable injury. *E.g.*, *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709 (Ky. 2000) (involving a medical malpractice claim); *Louisville Trust Co.*, 580 S.W.2d at 497-502 (involving a products liability claim against an asbestos manufacturer). The discovery rule similarly applies in this case because it centers around an allegedly defective implanted product. *E.g.*, *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406-408 (6th Cir. 2002) (applying Kentucky's discovery rule to a products liability claim against a breast implant manufacturer); *Winkler v. Boston Scientific Corp.*, No. 5:17-274-KKC, 2018 WL 1474067, at *3 (E.D. Ky. Mar. 26, 2018).

Kentucky plaintiffs also "have a duty to inquire into the safety of product where it is apparent from the facts that the product may have been a potential cause of an injury." *Fluke Corp.*, 306 S.W.3d at 64. "[I]n the products liability context, a potential plaintiff's awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on the plaintiff the duty to discover the responsible parties." *Id.* (internal quotation and citations omitted). The duty to inquire here correlates with the time at which Jenesta acquired constructive knowledge such that an exercise of reasonable diligence would have led her to suspect that the pelvic mesh itself was potentially defective and the defendants were culpable. *See Adams*, 2013 WL 3367134, at *3; *Louisville Trust Co.*, 580 S.W.2d at 501.

Therefore, the critical question is when Jenesta had knowledge of facts that would reasonably provoke such an inquiry. The plaintiffs maintain that this is a question of fact that should be reserved for the jury under Kentucky law. [Record No. 82, pp. 8-9 (citing *Lipsteuer v. CSX Transp., Inc.*, 37 SW.3d 732, 737 (Ky. 2000))]. But "when a federal court sits in diversity, allocation of functions between judge and jury must be made by recourse to federal law." *Elam v. Menzies*, 594 F.3d 463, 467 (6th Cir. 2010). And both federal *and* Kentucky

law indicate that when no material facts are in dispute, the court determines whether a cause if action has accrued under the discovery rule. *See id.*; *Asher*, 2008 WL 2548800, at *4 (addressing *Lipsteuer* and determining that under Kentucky law, accrual is a question for the court when there are no disputed material facts); *see also Briley v. Burns Int'l SAFETOHIRE.COM, Inc.*, 78 F. App'x 481, 484 (6th Cir. 2003) ("The threshold question is one of law: whether the statute of limitations bars [the plaintiff's] claim."). There is no dispute regarding the material underlying facts concerning the dates and events relevant to accrual, and the Court will proceed with its analysis.

The plaintiffs alternatively argue that the relevant causes of action accrued in November 2011 when they saw the television advertisement alerting them to the inherent dangers of the Prolift device. [Record No. 82, p. 8] And, as they contend, the record plainly indicates that the plaintiffs did not have actual knowledge of the Prolift's alleged dangers until they saw this ad.

It is apparent, however, that Jenesta had sufficient knowledge of critical facts that would put her on notice of the device's potential defects, trigger the duty to inquire, and start the limitations clock by March 2011. Jenesta had the Prolift implanted in 2006 to treat the rectocele. She testified that Dr. Guiler informed her in October 2008 that the right arm of the mesh had "come loose." He accordingly performed revision surgery to remove that arm of the mesh. After continued pain, she had a second revision surgery on September 27, 2010, to remove a part of the mesh that had "rolled up." However, problems persisted to the point where Larry detected a scrape during intercourse around December 2010. Dr. Jenkins recommended a third surgery to remove mesh in March 2011 after Jenesta again reported dyspareunia.

The facts surrounding the 2008 initial revision surgery may have been enough to start the limitations clock because Jenesta was aware that the right arm of the mesh had "come loose." This information arguably necessitated further investigation into a potential product defect. But when her knowledge in 2008 is considered alongside the 2010 second revision surgery, 2010 post-surgery intercourse incident, and March 2011 recommendation of a third surgery to remove mesh, it is clear that her relevant causes of action accrued no later than March 2011. Jenesta's claims were all asserted in either May or September 2012, more than one year after they accrued. Thus, KRS § 413.140(1)(a) bars the relevant products liability and personal injury claims.

Additionally, Larry's loss of consortium claim accrued at the same that Jenesta's claims accrued. While loss of consortium is an independent cause of action that seeks to compensate a spouse's legal injury, it is derivative of the claims of the individual who suffered actual physical injury. *Halcomb v. Britthaven, Inc.*, No. 6: 12-255-DLB-HAI, 2015 WL 998560, at *11 (E.D. Ky. Mar. 5, 2015). This Court therefore has determined that a loss of consortium claim accrues at the same time the physically-injured spouse's causes of action accrue. *Richardson v. Rose Transport, Inc.*, No. 5: 11-317-KKC, 2013 WL 620188, at *1-2 (E.D. Ky. Feb. 19, 2013) (holding that a wife's 2012 loss of consortium claim was barred by KRS § 413.140(1)(a) even though she asserted it within a year of her husband's 2011 death because the husband's underlying claim arose in 2008). Accordingly, Larry's loss of consortium claim accrued no later than March 2011 and is barred by the statute of limitations because it was not filed until May 2012.

The plaintiffs also argue that Kentucky law is clear that "one who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act

- 12 -

of [a defendant]." [Record No. 82, p. 5 (citing *Wiseman*, 37 S.W.3d at 712-13)] That was true in *Wiseman's* medical malpractice context, but the same reasoning does not apply to the circumstances of this specific products liability case. In *Wiseman*, a piece of a metal uterine probe was left in the plaintiff's body during a 1989 surgery. *Id.* at 710-11. The plaintiff reported pain and complications after the surgery to multiple doctors, but none properly diagnosed her or even discovered the probe until 1996. *Id.* The Supreme Court of Kentucky found that the cause of action did not accrue until a doctor discovered and described the actual injury to her in 1996. *Id.* at 712-13. The immediate case, however, does not involve such grave misdiagnoses. Doctors communicated facts to Jenesta concerning the Prolift device that, when considered together, put her on notice of the device's potential defects more than one year prior to filing the relevant claims in May and September 2012. While there were other plausible causes of her continual pain, she had sufficient knowledge to warrant further inquiry into the safety of the device itself.

In summary, the Second Amended Short Form Complaint's Counts 1 (negligence), 3 (strict liability– failure to warn), 4 (strict liability– defective product), 5 (strict liability– design defect),[5] 14 (gross negligence), and 16 (loss of consortium) are barred by KRS § 413.140(1)(a)

---

[5] Although the design defect claim will be dismissed because it is barred by the statute of limitations, the Court finds that the claim would otherwise survive summary judgment. Kentucky uses a "risk-utility balancing test" to evaluate design defect claims. *Burgett v. Troy-Bilt*, 579 F. App'x 372, 378 (6th Cir. 2014). This test notably requires "proof of a feasible alternative design." *Id.* (citing *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004). The defendants claim that the plaintiffs have not carried their burden [Record No. 77, pp. 15-17], but the Court agrees with the plaintiffs that material issues of fact remain regarding the feasibility of using safer Ultrapro mesh for the device, rather than the Prolift's mesh, in 2006. [Record No. 82, pp. 13-15] Dr. Elliot's report [Record No. 82-23, pp. 13-14], as well as the facts of a similar action concerning Ethicon's Prolift, *Gross v. Gynecare*, A-0011-14T2, 2016 WL 1192556, at *9 (N.J. Super. Ct. App. Div. Mar. 29, 2016), suggest that Ethicon may have been able to develop such an alternative prior to Jenesta's surgery.

because they are personal injury, products liability, and loss of consortium claims that accrued no later than March 2011– more than one year prior to the dates the plaintiffs first asserted these claims in May or September 2012. There is no dispute as to the material facts relevant to this specific statute of limitations issue, and Counts 1, 3, 4, 5, 14, and 16 therefore will be dismissed.

### 2. Count 18 (Discovery Rule and Tolling) is Not a Separate Cause of Action.

While the Court's foregoing analysis demonstrates that the discovery rule applies to several of the plaintiffs' claims, Count 18, "discovery rule and tolling," is not a separate cause of action. *Petrey v. Ethicon, Inc.*, No. 5: 19-298-DCR, 2019 WL 5295185, at *3 (E.D. Ky. Oct. 18, 2019). Accordingly, that claim also will be dismissed.

### 3. Count 3 (Strict Liability- Failure to Warn) Also Fails for Lack of Proximate Cause.

As discussed above, Count 3 (a strict products liability for failure to warn claim) is barred by the statute of limitations. However, the defendants are also correct that this claim fails as a matter of law because any warning that may have been inadequate was not the proximate cause of the alleged injuries. [Record No. 77, pp. 13-14]

Kentucky applies the learned intermediary doctrine, "an exception to the general rule that a manufacturer's duty to warn of any risks or dangers inherent in the product runs to the ultimate consumer," to failure to warn claims involving implanted medical devices. *Sturgeon v. Johnson & Johnson*, No. 5:15-93-KKC, 2017 WL 4080686, at *3 (E.D. Ky. Sept. 24, 2017); *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 762, 770 (Ky. 2004) (adopting the approach outlined in Restatement (Third) of Torts: Prod. Liab. § 6 (1998)). The learned intermediary doctrine instructs that a manufacturer's "duty to warn of the foreseeable risks of harm of a medical

device is satisfied if adequate warnings are given to the patient's health care provider." *Sturgeon*, 2017 WL 4080686, at *3 (citing *Larkin*, 153 S.W.3d at 762).

Further, a plaintiff asserting a strict products liability claim for failure to warn in Kentucky must establish that the manufacturer had a duty to warn, any warnings given were inadequate, and the inadequate warnings were the proximate cause of the injury. *Stewart v. General Motors corp.*, 102 F. App'x 961, 964 (6th Cir. 2004) (citing *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 537 (6th Cir. 1995)); *Manuel v. Traditional Sporting Goods, Inc.*, No. 5:09-CV-406-KSF, 2011 WL 6091710, at *6 (E.D. Ky. Dec. 7, 2011). "[U]nder Kentucky law, causation or proximate cause is defined by the substantial factor test: was the defendant's conduct a substantial factor in bringing about plaintiff's harm?" *Morales*, 71 F.3d at 537 (citations omitted). "Causation is an element which may be proved by circumstantial evidence, and in that situation the evidence must be sufficient to tilt the balance from possibility to probability." *Id.* (citations and internal quotations omitted).

Here, the record is clear that any inadequate warning in the instructions for use (or other Prolift guides) was not the proximate cause of the alleged injuries in this case. Dr. Guiler testified that he did not consult these materials to obtain information about the risks of implanting the Prolift device in Jenesta and, in fact, has never relied on them for such information. Instead, he relied on personal surgical experience and demonstrations by preceptors to inform his knowledge of risks involved in similar surgeries.

The plaintiffs contend that material questions of fact surrounding proximate cause remain because a jury could find that the failure of preceptors or Ethicon representatives at medical summits to adequately convey the Prolift's risks to Dr. Guiler could be the proximate cause of the alleged injuries. The Cutters cite to no caselaw involving the breach of a duty to

warn by medical device company agents where that company has also issued written warnings like the Prolift's instructions for use. Other similar medical device failure to warn claims involve alleged inadequacies in written warnings. *E.g.*, *Sturgeon*, 2017 WL 4080686, at *3.

But even assuming Ethicon agents' failure to warn implanting doctors could be the sole basis of Count 3, the undisputed facts of this case indicate that such a failure would not satisfy the claim's proximate cause element. Dr. Guiler testified that he knew the risks of the transvaginal mesh implantation ranged from mild to severe prior to Jenesta's initial 2006 surgery. He also stated that he specifically knew of the risk of contracture of the device's arm, dyspareunia, and pelvic pain. As the plaintiffs contend, Dr. Guiler agreed that he would have considered and communicated the device's contraindication for sexually active women had preceptors or Ethicon representatives provided such information. But the doctor nevertheless insisted that his knowledge of Prolift implant risks *in 2016*, long after Jenesta's complications as well as those of other similarly-situated plaintiffs arose, did not change his opinion that the "Prolift device was safe and effective for the treatment of pelvic organ prolapse in women" in 2006. [Record No. 82-7, p. 1] Indeed, he continued to believe that the benefits outweighed the risks and that the device had generally improved patients' quality of life. The clear indication is that further information regarding the Prolift's risks would not have affected his decision to use the Prolift device for Jenesta's prolapse surgery.

The plaintiffs insist that Dr. Guiler would have conveyed details of warnings from Ethicon's representatives to Jenesta, who would have in-turn refused the surgery. [Record No. 82, p. 12] But while Jenesta certainly would have had the authority to make that decision, nothing in the record indicates that she would have done so. It is generally accepted that patients will, and should, primarily rely on their doctors' assessments of a procedure's risks

and benefits. *See Larkin*, 153 S.W.3d at 763-64 (noting that this idea, along with a physician's "superior position" to communicate such an analysis, is a major rationale of the learned intermediary doctrine). Jenesta testified that she decided to have the Prolift device implanted "based on the recommendation of Dr. Guiler" alone. [Record No. 82-3, p. 20] Dr. Guiler stated that additional knowledge of alleged Prolift defects would not have changed his 2006 determination that the benefits of the implant outweighed the risks. Thus the record overwhelmingly suggests that Jenesta would have opted to undergo the surgery had he communicated additional risks while recommending the procedure.[6]

Based on the foregoing, any inadequate warning from Ethicon to Dr. Guiler regarding Prolift risks was not the proximate cause of the alleged injuries in this case. Dr. Guiler did not read the instructions for use and did not rely on written warnings from Ethicon. And although he engaged with Ethicon preceptors and representatives, his testimony demonstrates that any further information about Prolift risks would not have changed his risk-benefit assessment or determination that the product's implantation was a safe and effective procedure. Any inadequate warning from Ethicon to Dr. Guiler was not a substantial factor in causing the alleged injuries, and the failure to warn claim accordingly fails for lack of proximate cause.

### 4. Lack of Privity and the Statute of Limitations Bar Counts 11 and 12.

The defendants argue that Counts 11 and 12, breach of express warranty and breach of implied warranty, should be dismissed for lack of privity and because they are barred by the

---

[6] Jenesta indicated that she would not have consented to the surgery had she known that she would *actually suffer* the alleged subsequent injuries, but any individual who is practically certain that a procedure will produce considerable future harm would refuse to undergo that procedure.

applicable statute of limitations.  [Record No. 77, pp. 17-18]  The Court agrees, and these claims will be dismissed.

"[P]rivity remains a prerequisite for products liability claims based on warranty . . . ." *Compex Int'l Co., Ltd. V. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006) (citing *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985)).  "Privity of contract requires an underlying contractual relationship, one existing in a buyer-seller relationship."  *Sturgeon*, 2017 WL 4080686, at *1 (internal quotations omitted).  "If liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted in Kentucky."  *Williams*, 695 S.W.2d at 413.  KRS § 355.2-318, Kentucky's version of the relevant Uniform Commercial Code section, provides an exception to the privity requirement by extending a seller's warranty to "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." KRS § 355.2-318.

The plaintiffs' initial Complaint as well as the MDL's First Amended Master Long Form Complaint alleges that the plaintiffs, or Jenesta's implanting physician (Dr. Guiler), were in privity of contract with the defendants.  [Record Nos. 1, pp. 19, 23 and 110-1, pp. 47, 49] However, there is no evidence to support privity between the plaintiffs and Ethicon because they did not purchase the product directly from the manufacturer.  Instead, the record suggests that Dr. Guiler purchased the product.  [*See* Record Nos. 1, pp. 19, 23, 82-3, and 82-6]  And the plaintiffs are neither members of his family or household, nor guests subject to exceptions to the privity rule outlined in KRS § 355.318.

Courts applying Kentucky law routinely dismiss breach of warranty claims involving medical implants for lack of privity when plaintiffs clearly did not contract with the relevant device manufacturers. *E.g.*, *Sturgeon*, 2017 WL 4080686, at *1 (dismissing the breach of warranty claim concerning a plate implanted in the plaintiff's wrist due); *Gaunce v. CL Medical, Inc.*, No. 5:14–346–DCR, 2015 WL 893569, at *2 (E.D. Ky. Mar. 2, 2015) (dismissing breach of warranty claims involving a mid-urethral sling implant); *Baird v. Bayer Healthcare Pharm., Inc.*, No. 6:13–077–DCR, 2013 WL 5890253, at *3 (E.D. Ky. Oct. 31, 2013) (dismissing breach of warranty claims concerning an intrauterine device implanted in the plaintiff). Counts 11 and 12 will likewise be dismissed for lack of privity.

And even if the plaintiffs could establish privity or an exception to the requirement, these breach of warranty claims are barred by the applicable statute of limitations. KRS § 355.2-725 provides a four-year limitations period for breach of warranty claims. KRS § 355.2-725(1); *Puckett v. Comet Mfg. Corp.*, 892 F.2d 80 (Table), No. 89-5389, 1989 WL 153966, at *2 (6th Cir. Dec. 21,1989) (per curiam). A breach of warranty claim "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." KRS § 355.2-725(2). Thus, the discovery rule is inapplicable to breach of warranty claims involving medical device implants. *Winkler*, 2018 WL 1474067, at *3 (finding that KRS § 355.725(2) precludes application of the discovery rule); *see also Imes v. Touma*, 784 F.2d 756, 757-58 (6th Cir. 1986). The date of implantation is the date the warranty claim accrues. *Winkler*, 2018 WL 1474067, at *3.

Dr. Guiler implanted the Prolift device in 2006, and the plaintiffs did not assert the claims for breach of express and implied warranty until they initially filed suit on May 14, 2012. [Record No. 1] Counts 10 and 11, therefore, are barred by the statute of limitations.

## 5. Counts 6, 8, and 9 Fail for Lack of an Affirmative Material Misrepresentation.

The plaintiffs assert claims for common law fraud (Count 6), constructive fraud (Count 8), and negligent misrepresentation (Count 9). [Record No. 27] As the defendants argue, these claims fail as a matter of law because Ethicon did not make an affirmative material misrepresentation that Jenesta relied upon in choosing to use the Prolift device. [Record No. 77, pp. 18-19]

Kentucky common law fraud, constructive fraud, and negligent misrepresentation claims all require that a defendant make some form of an affirmative material misrepresentation that is relied upon by a plaintiff. Common law fraud requires, *inter alia*, proof of a defendant's intentional material misrepresentation by a defendant that was relied upon by a plaintiff. *Snowden v. City of Wilmore*, 412 S.W.3d 195, 209 n. 10 (Ky. Ct. App. 2013) ("Fraud requires proof of six elements: material misrepresentation by the defendant; falsehood; making of a statement known to be false; to induce action by the plaintiff; reliance by the plaintiff; and injury to the plaintiff."). A constructive fraud claim arises out of a material misrepresentation by a defendant in a fiduciary relationship with the plaintiff. *See Nash-Finch Co. v. Casey's Foods, Inc.*, 762 F. App'x 218, 224 (6th Cir. 2018) (affirming dismissal of a constructive fraud claim "[b]ecause Appellants submitted no evidence that Nash-Finch made a material misrepresentation, or false or fraudulent statement"); *Kendrick v. Bailey Vault Co., Inc.*, 944 S.W.2d 147, 150 (Ky. Ct. App. 1997) ("[C]onstructive fraud arises from the breach of a legal duty which the law would pronounce fraudulent because of its tendency to deceive others, violate confidence, or injure public interest."). Negligent misrepresentation "requires

an affirmative false statement" by a defendant to a relying plaintiff. *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 744-46 (Ky. 2011).

It is undisputed in this case that Jenesta did not encounter any information or advertisement promoting the Prolift device prior to her surgery in 2006. Her testimony indicates that the decision to undergo surgery and use the Prolift device was based solely on the recommendation of Dr. Guiler. Ethicon made no affirmative material misrepresentation to the plaintiff that resulted in her decision to use this specific mesh product, and Counts 6, 8, and 9 will accordingly be dismissed.

### 6. Count 17 (Punitive Damages) is not a Cause of Action.

The defendants correctly argue that Count 17 (the punitive damages claim) is not a cause of action. [Record No. 82, p. 2 n. 2] While the plaintiffs may seek punitive damages, "[a] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Petrey v. Ethicon, Inc.*, No. 5: 19-298-DCR, 2019 WL 5295185, at *3 (E.D. Ky. Oct. 18, 2019) (quoting *Grubbs v. Thermo Fisher Scientific*, No. 13-183-DLB, 2014 WL 1653761, at *3 (E.D. Ky. Apr. 23, 2014)). Count 17, therefore, will be dismissed.

### D. The Remaining Counts

The defendants have failed to establish that they are entitled to judgment as a matter of law on Counts 7, 10, 13, and 15. Counts 13 (violation of consumer protection laws) and 15 (unjust enrichment) were not addressed in the motion for summary judgment, apart from the defendants' general assertion that they are entitled to summary judgment on all counts. [Record No. 77, p. 1] Therefore, the defendants have failed to carry their initial burden of pointing out that the plaintiffs lack evidentiary support for these claims. *See Celotex Corp. v.*

*Catrett*, 477 U.S. at 325. The motion arguably addresses Counts 7 (fraudulent concealment) and 10 (negligent infliction of emotional distress, or "NIED") by seeking dismissal of "fraud" claims due to a lack of an affirmative material misrepresentation and "personal injury" claims on statute of limitations grounds. [Record No. 77, pp. 5-10, 18-19] But these arguments likewise fail to establish that Ethicon is entitled to judgment as a matter of law on Counts 7 and 10.

The Court construes the fraudulent concealment claim as one for fraud by omission, which has "substantially different elements" than a claim for fraud by misrepresentation in Kentucky. *Republic Bank & Trust Co. v. Bears Stearns & Co., Inc.*, 683 F.3d 239, 255 (6th Cir. 2012) (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003)). "Unlike fraud by misrepresentation, which hinges on an affirmative misstatement, a fraud by omission claim is grounded in a duty to disclose." *Id.* (citing *Giddings & Lewis, Inc.*, 348 S.W.3d at 747). "To prevail on such a claim, a plaintiff must prove: '(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence.'" *Id.* (citing *Giddings & Lewis, Inc.*, 348 S.W.3d at 747). The defendants appear to assume that all fraud claims should be dismissed because Ethicon made no affirmative material misrepresentation that was relied upon by Jenesta. [Record No. 77, pp. 18-19] But fraud by omission, as its name suggests, does not require an affirmative misrepresentation. Ethicon has accordingly failed to carry its burden.

Further, the NIED claim was filed within the applicable limitations period. Although NIED is "analyzed under general negligence principles" like personal injury actions, *Osborne*

*v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012), this Court has found that NIED claims are not subject to the KRS § 413.140(1)(a) one-year limitations period for personal injury actions. *Hall v. City of Williamsburg*, No. 6: 16-304-DCR, 2017 WL 2274327, at *6 n. 4 (E.D. Ky. May 24, 2017). Instead, NIED claims are subject to the five-year limitations period of KRS § 413.120(6), the same limitations period the Supreme Court of Kentucky has applied to intentional infliction of emotional distress claims. *Id.* at *6 (citing *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984)).

Accounting for the discovery rule, the NIED claim could not have accrued earlier than October 2008 when Dr. Guiler informed Jenesta that the right arm of the Prolift had "come loose." The plaintiffs initially asserted the NIED claim in their September 2012 First Amended Short Form Complaint. [Record No. 26] It was filed within five years of its accrual and is not time-barred like the personal injury claims subject to the one-year limitations period of KRS § 413.140(1)(a).

In summary, the defendants have failed to meet their burden for dismissal of Counts 7, 10, 13, and 15. *See Celotex Corp. v. Catrett*, 477 U.S. at 325. As a result, the Court declines to enter summary judgement on these claims.

### III.

The defendants have demonstrated that they are entitled to judgment as a matter of law on thirteen of eighteen counts asserted in the Second Amended Short Form Complaint: (1) negligence; (3) strict liability– failure to warn; (4) strict liability– defective product; (5) strict liability– design defect; (6) common law fraud; (8) constructive fraud; (9) negligent misrepresentation; (11) breach of express warranty; (12) breach of implied warranty; (14) gross negligence; (16) loss of consortium; (17) punitive damages; and (18) discovery rule and

tolling. Additionally, the plaintiffs have stated that they no longer assert Count 2 (strict liability– manufacturing defect). The defendants, however, have not met their summary judgment burden for dismissal of Counts 7 (construed as fraud by omission), 10 (NIED), 13 (violation of consumer protection laws), and 15 (unjust enrichment).

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.      Defendants' motion for summary judgment [Record No. 76] is **GRANTED**, in part, and **DENIED**, in part.

2.      Counts 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 14, 16, 17, and 18 are **DISMISSED** with prejudice. Counts 7, 10, 13, and 15 remain pending.

Dated:  January 9, 2020.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky